UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY PRITCHETT,

           Petitioner,

v.

PAT WARREN,[1]

           Respondent.

_____/

Case No. 2:15-cv-13233

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER
DIRECTING THE CLERK
TO AMEND THE DOCKET, DENYING
PETITIONER'S HABEAS PETITIONS [1, 12],
DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Anthony Pritchett is confined in a Michigan prison and petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2254. Pritchett's imprisonment stems from convictions for second degree murder, in violation of Mich. Comp. Laws § 750.317; assault with intent to commit murder, in violation of Mich. Comp. Laws § 750.83; and possession of a firearm during the commission of a felony ("felony firearm"), in violation of Mich. Comp. Laws § 750.227b.

Pritchett's initial habeas petition presented four grounds for relief: (1) there was insufficient evidence to support his convictions; (2) admission of a witness's prior record testimony was error; (3) the prosecutor's cross-examination of Pritchett

_____

[1] The Court will direct the Clerk of the Court to amend the docket to reflect the warden of the prison of Petitioner's current incarceration.

regarding other, uncharged bad acts and his argument that Pritchett had an obligation to present witnesses were prejudicial and required a new trial; and (4) trial counsel provided ineffective assistance at sentencing by failing to object when the trial court sentenced Pritchett to a minimum sentence that was more than two-thirds of the maximum sentence. *See* ECF 1.

Pritchett's amended habeas petition presented five additional grounds of relief: (1) the trial court abused its discretion by denying his post-conviction motion for relief from judgment and for an evidentiary hearing; (2) newly-discovered evidence creates a viable self-defense claim; (3) he was denied effective assistance of trial counsel; (4) the trial court abused its discretion and violated Pritchett's confrontation rights by admitting a witness's prior record testimony; and (5) he was denied effective assistance of appellate counsel because counsel failed to raise certain claims in Pritchett's post-conviction state proceedings. *See* ECF 12.

Pritchett's claims are procedurally defaulted, not cognizable on habeas review, or meritless. And the state courts reasonably adjudicated the merits of some of Pritchett's claims. The Court will therefore deny Pritchett's habeas petition.

## BACKGROUND

Pritchett waived his right to a jury trial and instead proceed with a bench trial in state trial court. *People v. Pritchell*,[2] No. 311052, 2014 WL 688560, at *1 (Mich. Ct. App. Feb. 20, 2014). The state appellate court summarized the facts of Pritchett's case. Between August 12 and August 13, 2011, "five people were shot in the backyard

---

[2] The state courts incorrectly spelled Petitioner's name as "Pritchell." The Court will correctly spell Petitioner's name.

of a Detroit home." *Id.* A gunshot to the chest killed one victim, Tramaine Matlock.

*Id.* The other four victims—including Devonta Washington—were not fatally injured.

*Id.*

> Nine, .45–caliber casings were found in a straight line along the fence in the backyard. According to testimony at trial, this evidence supported that there was one shooter, who stood in one place while firing a .45–caliber gun. [Pritchett], who was a member of a gang called The Take Over (TTO), was later arrested and charged with first-degree murder, second-degree murder, four counts of assault with intent to murder, a gang membership felony, and felony-firearm. Three of the assault with intent to murder charges were dismissed before trial. Washington testified at [Pritchett's] preliminary examination. However, he did not appear at trial. Detroit Police Detective Theopolis Williams testified that police officers were unable to locate Washington to serve him with a subpoena.
>
> At trial, [Pritchett] raised a claim of self-defense. He testified that, while he was at a party in August of 2011, a group of men arrived. Of the men in the group, [Pritchett] recognized Washington and a man named "Vonte," who was a member of a rival gang. [Pritchett] testified that he and the group of men were 10 to 12 feet away from one another in the backyard when he saw Vonte displaying a rival gang sign and Washington holding a clip in his hand and reaching for his pocket. [Pritchett] testified that he believed that Washington was reaching for a gun, and so he fired his .45–caliber pistol four times in the direction of Washington. [Pritchett] was convicted by the trial court of second-degree murder for the death of Matlock, assault with intent to murder with respect to Washington, and felony-firearm.

*Id.* The trial court sentenced Pritchett to the following terms of imprisonment: (1)

eighteen years and nine months to twenty-five years for the murder conviction; (2) a

concurrent term of ten years and six months to fifteen years for the assault conviction;

and (3) a consecutive term of two years for the felony-firearm conviction. *Id.*

Through counsel, Pritchett appealed his convictions and argued that (1) the

prosecution failed to present sufficient evidence to sustain his convictions; (2)

Washington's testimony from the preliminary examination was erroneously admitted in evidence; and (3) the prosecutor committed misconduct by (a) eliciting evidence of Pritchett's other "bad acts" and (b) arguing that Pritchett had an obligation to present witnesses. In a pro se supplemental brief, Pritchett argued that his trial attorney should have objected to his minimum sentence for second-degree murder and that the admission of Washington's testimony from the preliminary examination violated his right of confrontation. The Michigan Court of Appeals affirmed Pritchett's convictions in a *per curiam* opinion. *See id.* And the Michigan Supreme Court denied leave to appeal. *People v. Pritchell*, 497 Mich. 868 (2014).

Pritchett filed his habeas petition on September 14, 2015 and raised the four claims that he presented to the state courts on direct review. *See* ECF 1. He then moved to hold his petition in abeyance so that he could pursue additional state remedies for claims not included in his habeas petition. ECF 6. On November 13, 2015, the Court granted Pritchett's motion, held his petition in abeyance to allow him to initiate post-conviction, state-court proceedings, and administratively closed the case. ECF 7.

Pritchett subsequently filed a motion for relief from judgment in the state trial court. He argued that: (1) he was entitled to a new trial because newly-discovered evidence gave rise to a viable claim of self-defense; (2) he was denied effective assistance of counsel by trial counsel's failure to (a) investigate, locate, and subpoena *res gestae* witnesses, (b) request an expert witness on fingerprints and firearms or ballistics, and (c) object to the prosecution's failure to provide the defense with

potentially exculpatory evidence from Devonta Washington's Metro PCS account; (3) the trial court abused its discretion and violated his right of confrontation when it allowed Washington's testimony from the preliminary examination to be read into the record; and (4) appellate counsel was ineffective for failing to raise his other claims on appeal. The trial court denied Pritchett's motion in a reasoned decision. *See* ECF 15-7 (opinion on Pritchett's motion for relief from judgment in Wayne County Circuit Court, *People v. Pritchell*, No. 11-009262-01-FH).

Pritchett appealed the trial court's decision, but the Michigan Court of Appeals denied leave to appeal for failure to show that the trial court erred in denying his motion for relief from judgment. *People v. Pritchell*, No. 333222 (Mich. Ct. App. Aug. 18, 2016).[3] On May 2, 2017, the Michigan Supreme Court denied leave to appeal because Pritchett failed to establish "entitlement to relief under [Michigan Court Rule] 6.508(D)." *People v. Pritchell*, 500 Mich. 981 (2017).

On July 18, 2017, Pritchett filed a motion to lift the Court's stay and an amended petition. ECF 11, 12. The amended petition raises the four claims that Pritchett presented during the post-conviction state court proceedings and an additional claim that the trial court erred by denying his motion for relief from judgment and his request for an evidentiary hearing. *See* ECF 12.

The Court reopened the case and directed Respondent to file a responsive pleading. ECF 13. Respondent filed a response and argued that Pritchett's claims

---

[3] http://publicdocs.courts.mi.gov/coa/public/orders/2016/333222(10)_order.pdf (last visited July 2, 2019).

lack merit, are procedurally defaulted, are not cognizable on habeas review, or were rejected by the state courts on reasonable grounds. ECF 14, PgID 138–40.

## STANDARD OF REVIEW

The Court may not grant habeas relief to a state prisoner unless his claims were adjudicated on the merits and the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent." *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

The state court unreasonably applies Supreme Court precedent not when its application of precedent is merely "incorrect or erroneous" but when its application of precedent is "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (internal citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 654 (2004)).

A federal court reviews only whether a state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Greene v. Fisher*, 565 U.S. 34, 38 (2011). A state court

need not cite to or be aware of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Decisions by lower federal courts "may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)).

Finally, a federal habeas court presumes the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may successfully rebut the presumption only by clear and convincing evidence. *Id.*

## DISCUSSION

I.     Claim One: Insufficient Evidence

Pritchett first alleges that the prosecution failed to present sufficient evidence to sustain his convictions. ECF 1, PgID 4. More specifically, Pritchett claims that there was insufficient evidence to rebut his claim of self-defense. He contends that the trial court merely relied on the physical evidence and failed to consider whether he was provoked into committing the crime, acted in hot blood, or acted in defense of himself and others. *Id.* The Michigan Court of Appeals determined on review of Pritchett's claim that the evidence was sufficient to establish that Pritchett did not act in self-defense, that the prosecution met its burden of proof, and that Pritchett was not entitled to relief on his claim. ECF 15-10, PgID 606–07.

A. *Clearly Established Federal Law.*

The Due Process Clause of the Fourteenth Amendment to the United States Constitution "protects the accused against conviction except upon proof beyond a

reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Accordingly, the Court considers "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (emphasis in original) (citation omitted).

Ordinarily, "the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Here, Pritchett does not deny committing the crimes for which he is incarcerated, however, and he has not alleged that the prosecution failed to prove the elements of the charged offenses. Rather, the issue is whether the prosecution adequately rebutted Pritchett's defense of self-defense.

A defendant carries the burden of proving an affirmative defense; the Government need not prove "the nonexistence of all affirmative defenses." *Smith v. United States*, 568 U.S. 106, 110 (2013) (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)). The Government may not shift the burden of proof when an affirmative defense negates an element of the crime, however. *Id.* But, the Government need not overcome an affirmative defense beyond a reasonable doubt when the proffered defense "excuses conduct that would otherwise be punishable, but does not controvert the elements of the offense itself." *Id.* (citation and internal marks omitted).

Here, Pritchett seeks to excuse conduct that would otherwise be punishable— shooting another person. He wants to excuse the shooting by asserting that he acted

in self-defense or defense of others. His self-defense argument does not warrant federal habeas relief because,

> [a]lthough Michigan law places the burden on prosecutors to disprove claims of self-defense, *see People v. Dupree*, [486 Mich. 693, 709–10] (Mich. 2010), the Constitution does not, *see Patterson v. New York*, 432 U.S. 197, 209–10 (1972); *Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir. 1999), *abrogated on other grounds*, *Mackey v. Dutton*, 217 F.3d 399, 406 (6th Cir. 2000). Accordingly, the prosecution's alleged failure to prove that [Pritchett] did not act in self-defense cannot form the basis for the grant of habeas relief. *See Caldwell*, 181 F.3d at 740.

*Arcaute v. Jackson*, No. 18-2308, 2019 WL 2056675, at \*2 (6th Cir. Feb. 12, 2019). In other words,

> the due process "sufficient evidence" guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime. *See Allen v. Redman,* 858 F.2d 1194, 1196–98 (6th Cir.1988).

*Caldwell*, 181 F.3d at 740. Pritchett's claim therefore fails to raise a federal constitutional issue and is not cognizable on habeas review. *See Duffy v. Foltz*, 804 F.2d 50, 54 (6th Cir. 1986) (stating that, because the petitioner's sanity was not an element of the crime under Michigan law, the petitioner's claim that there was insufficient proof of sanity did not raise a federal constitutional issue).

B. *The Merits.*

Even if Pritchett's claim were cognizable here, claims of insufficient evidence "are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). First, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from the evidence admitted at trial." *Id.* (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)). "And second, on habeas

review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* (quoting *Cavazos*, 565 U.S. at 2).

The Michigan Court of Appeals concluded on review of Pritchett's claim that there was sufficient evidence from which a reasonable fact finder could find that Pritchett did not act in self-defense. *Pritchell*, 2014 WL 688560, at *2. The Court of Appeals pointed out that, under Michigan law, once a defendant produces some evidence that he acted in self-defense, "the prosecution bears the burden of proving that a killing was not done in self-defense." *Id.* at *1 (citing *Dupree*, 486 Mich. at 709–10). The Court of Appeals also pointed out that, "to justify the use of 'deadly force,' a defendant must 'have an honest and reasonable belief that there is a danger of [imminent] death' or imminent 'great bodily harm' and that it is necessary to exercise deadly force to prevent such harm." *Id.* (quoting *People v. Guajardo*, 300 Mich. App. 26, 35–36 (2013)).

Pritchett testified at trial that he was scared and feared for his life when someone named Vonte displayed a rival gang signal and Washington put his hand in his pocket while holding an extended clip for a gun in his other hand. ECF 15-4, PgID 448–51. Pritchett further testified that Washington was affiliated with a gang that did not like Pritchett's gang. *See id.* at 447, 453. The Michigan Court of Appeals determined that Washington's act of holding a clip and reaching in his pocket was not sufficient to show that Pritchett was in imminent danger. *Pritchell*, 2014 WL

688560, at *2. The Court of Appeals noted that Pritchett did not see Washington with a gun, the clip was not inside a gun, and Washington's movements were not accompanied by a verbal threat. *Id.* The Court of Appeals opined that Pritchett could not "manufacture a self-defense theory from the innocent act of placing a hand in a pocket." *Id.* (quoting *People v. Squire,* 123 Mich. App. 700, 708–709 (1983)).

The Court of Appeals went on to say that Pritchett's trial testimony "was inconsistent with his August 23, 2011, statement to Detective Theopolis Williams that someone named 'Vonte,' not Washington, held the clip and reached in his pocket." *Id.* The Court of Appeals declined to interfere with the trial court's finding that Pritchett was not credible. *Id.* The Court of Appeals also noted that Pritchett's defense was not consistent with the physical evidence, which "established that the shooter stood in one place and fired nine rounds." *Id.* Further, "[a]fter the shooting, defendant fled the scene, discarded the weapon, and did not report the incident to the police." *Id.* The Court of Appeals opined that "the physical evidence and [Pritchett's] behavior after the shooting [were] inconsistent with his assertion that he acted in self-defense based on an honest belief that he was in imminent danger." *Id.* (citing *People v. Yost,* 278 Mich. App. 341, 357 (2008)). The Court of Appeals concluded that the prosecution carried its burden of proof and that Pritchett was not entitled to relief. *Id.*

For all the reasons given by the state court, a rational trier of fact could have concluded from the evidence that Pritchett did not act in self-defense. The state appellate court's conclusion—that the prosecution met its burden of disproving

Pritchett's defense of self-defense—was therefore objectively reasonable. Pritchett is not entitled to relief on his first claim.

II.    Claims Two and Eight: Improper Use of Washington's Prior Testimony

In his second claim, Pritchett alleges that the trial court abused its discretion by permitting the prosecutor to admit in evidence Washington's testimony from the preliminary examination without determining whether there was a justifiable reason for Washington not being available. ECF 1, PgID 5. In his eighth claim, Pritchett asserts that the use of Washington's prior-recorded testimony violated his constitutional right of confrontation. ECF 12, PgID 101–02.

Pritchett raised these issues on direct appeal and in his motion for relief from judgment. The Michigan Court of Appeals rejected the claim on direct review because the state trial court "indicated that it had conducted additional research, excluded the testimony, and expressly stated that it did not consider the testimony in rendering its verdict." *Pritchell*, 2014 WL 688560, at *3. The state trial court rejected the claim during Pritchett's post-conviction proceedings because Pritchett unsuccessfully raised the issue on appeal. ECF 15-7, PgID 592.

The Sixth Amendment to the United States Constitution guarantees defendants in criminal cases the right "to be confronted with the witnesses against them." U.S. Const. amend. VI. The Sixth Amendment applies to the States through the Fourteenth Amendment. *Idaho v. Wright*, 497 U.S. 805, 813 (1990). And it "includes the right to cross-examine witnesses." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (citing *Pointer v. Texas*, 380 U.S. 400, 404, 406–07 (1965)). But errors

under the Sixth Amendment's Confrontation Clause are subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). And on habeas review, an error is considered harmless unless it had a "substantial and injurious effect or influence" on the factfinder's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

Here, the state trial court initially admitted Washington's preliminary-examination testimony in evidence because the prosecution showed due diligence and the testimony was admissible under the exception to hearsay for former testimony. ECF 15-3, PgID 351–52. Before the state trial court issued its verdict, however, it stated that it had conducted additional research and concluded from *People v. Starr*, 89 Mich. App. 342 (1979), that its initial ruling to admit Washington's prior testimony was probably incorrect. ECF 15-4, PgID 504–06. As a remedy for its incorrect ruling, the state trial court stated that it would not consider Washington's preliminary-examination testimony when rendering its verdict in the case. *Id.* at 506.

Given the trial court's explicit statement that it was not considering Washington's prior testimony, any error in initially admitting the testimony could not have had a substantial and injurious effect or influence on the court's verdict. The alleged error was therefore harmless.

Although Pritchett contends that a bell once run cannot subsequently be ignored, "[i]n bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions" and it must be presumed "that they follow their own instructions when they are acting as factfinders." *Harris v. Rivera*, 454 U.S. 339, 346 (1981); *United States v. McCarthy*, 470 F.2d 222, 224 (6th Cir. 1972)

(stating that, "in a non-jury trial the introduction of incompetent evidence does not require a reversal in the absence of an affirmative showing of prejudice" and that "[t]he presumption is that the improper testimonial evidence, taken under objection, was given no weight by the trial judge and the Court considered only properly admitted and relevant evidence in rendering its decision").

The presumption of regularity applies here because the state trial court gave no indication in its findings of fact and conclusions of law that it was relying on the evidence it had previously declared inadmissible. Moreover, after announcing that it would not be considering Washington's prior testimony, the state trial court twice repeated that it was considering only Pritchett's testimony and not Washington's prior-recorded testimony. ECF 15-4, PgID 507, 509. Pritchett has no right to relief on his claims.

III.  Claim Three: Prosecutorial Misconduct

Pritchett next alleges that the prosecutor committed misconduct by asking him on cross-examination whether (1) he had been arrested on an armed robbery charge eight days before trial and (2) he was a member of a gang, which frightened people and committed crimes. ECF 1, PgID 5–6; *see also* ECF 15-4, PgID 455–56, 468–69, 471 (prosecutor's cross-examination of Pritchett). According to Pritchett, there was no evidence to substantiate these questions, and the questions were extremely prejudicial. ECF 1, PgID 5.

The Michigan Court of Appeals concluded on review of Pritchett's claim that he had abandoned the claim by not citing any authority to support his assertions.

*Pritchell*, 2014 WL 688560, at *3. The Court of Appeals, nevertheless, stated that it had examined the prosecutor's comments and concluded that Pritchett was not denied a fair and impartial trial. *Id.* (citing *People v. Abraham*, 256 Mich. App. 265, 272 (2003)).

A. *Procedural Default.*

The State argues that Pritchett procedurally defaulted his claim by abandoning it on direct appeal. ECF 14, PgID 167–70. In the habeas context, a procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). "[A] federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). A habeas petitioner procedurally defaults a claim if:

> (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default." [*Jalowiec v. Bradshaw*, 657 F.3d 293, 302 (6th Cir. 2011)]. To determine whether a state procedural rule was applied to bar a habeas claim, [courts] look "to the last reasoned state court decision disposing of the claim." *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc).

*Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013).

B. *Application.*

Pritchett procedurally defaulted his claim. First, there is a state procedural rule that requires defendants in criminal cases to give more than cursory treatment to arguments in their appellate briefs:

> "An appellant may not merely announce his position and leave it to [the state court of appeals] to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v. Watson,* 245 Mich. App. 572, 587, 629 N.W.2d 411 (2001), citing *People v. Kelly,* 231 Mich. App. 627, 640–41, 588 N.W.2d 480 (1998). Such cursory treatment constitutes abandonment of the issue. *Watson, supra* at 587, 629 N.W.2d 411.

*People v. Matuszak*, 263 Mich. App. 42, 59 (2004). Petitioner violated the rule by not citing any legal authority for his allegations about the prosecutor. He cited only one court decision and relied on it for standard of review for a prosecutorial misconduct claim. *See* ECF 15-10, PgID 635 (citing *People v. Ackerman*, 257 Mich. App. 434 (2003)); *see also id.* at 635–36.

Second, the Michigan Court of Appeals enforced the rule in question by concluding that Petitioner had abandoned his claim by not citing any authority to support his assertions. *Pritchell*, 2014 WL 688560, at *3. The Michigan Court of Appeals alternative ruling on the merits of Pritchett's claim does not require the Court to disregard the state court's procedural ruling. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989).

Third, the rule was well-established and normally enforced long before Pritchett submitted his appellate brief in 2013. *See, e.g.*, *Matter of Toler*, 193 Mich. App. 474, 477 (1992) (stating that "[a] party may not merely announce his position and leave it to us to discover and rationalize the basis for his claim"). The state procedural rule was therefore an adequate and independent state ground for denying review of a federal constitutional claim.

The first three procedural-default factors are satisfied, and Pritchett has not advanced any argument in support of a finding of "cause and prejudice." The fourth procedural-default element is therefore satisfied.

In the absence of "cause and prejudice," a habeas petitioner may pursue a procedurally defaulted claim if he can "demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (quotation and internal marks omitted). "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Pritchett purports to have newly-discovered evidence of actual innocence, but the affidavit and social media posts that he has presented to the Court as new evidence are not credible evidence of actual innocence. *See infra*, Discussion, Part VI. A fundamental miscarriage of justice will not result from the Court's failure to address the substantive merits of Pritchett's prosecutorial-misconduct claim. The claim is therefore procedurally defaulted.

IV.    Claim Four: Ineffective Assistance of Counsel at Sentencing

Pritchett alleges that he was denied effective assistance of trial counsel when his attorney failed to object to his minimum sentence of eighteen years, nine months for second-degree murder. ECF 1, PgID 6. Pritchett claims that his minimum sentence violated *People v. Tanner*, 387 Mich. 683 (1972) because the minimum sentence was more than two-third of his maximum sentence of twenty-five years. *Id.* *Tanner* held "that any sentence which provides for a minimum exceeding two-thirds of the maximum is improper as failing to comply with the indeterminate sentence act." 387 Mich. at 690.

The Michigan Court of Appeals rejected Pritchett's claim because, under state law "there is no *Tanner* violation [when] the maximum possible sentence is 'life or any term of years' because 'the minimum will never exceed 2/3 of the statutory maximum sentence of life.'" *Pritchell*, 2014 WL 688560, at *3 (quoting *People v. Harper*, 479 Mich. 599, 617 n.31 (2007)).

Second-degree murder carries a maximum sentence of life imprisonment or any term of years. Mich. Comp. Laws § 750.317. The state court's conclusion that Pritchett's sentence for second-degree murder did not violate the two-thirds rule of *Tanner*, binds this Court on habeas corpus review. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Furthermore, because Pritchett's underlying state claim about his sentence lacks merit, trial counsel was not ineffective for failing

to object to Pritchett's sentence. *Hoffner v. Bradshaw*, 622 F.3d 487, 509 (6th Cir. 2010). Pritchett is not entitled to relief on his ineffective assistance of counsel claim.

V.    Claim Five: The Trial Court's Denial of Petitioner's Post-Judgment Motion

In his fifth claim, Pritchett alleges that the trial court abused its discretion when it declined to hold an evidentiary hearing and denied his motion for relief from judgment. ECF 12, PgID 78–81. According to Pritchett, the trial court made materially untrue statements and improper conclusions in its order denying his motion for relief from judgment. *Id.* at 78. Pritchett also asserts that it was improper for the Court to accept the testimony of certain witnesses as substantive evidence.

Pritchett's claim lacks merit because "errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citing *Kirby v. Dutton*, 794 F.2d 245, 246–47 (6th Cir.1986), and *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002)). Federal courts do not "second-guess state procedures for resolving motions once they have been presented," but "presume that, once a federal claim comes before a state court, the state judge will use a fair procedure to achieve a just resolution of the claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013). Thus, an evidentiary hearing or oral argument are not necessarily required. *Id.*

In light of *Cress* and *Good*, Pritchett's challenge to the state court's post-conviction procedures is not a cognizable claim on habeas corpus review. To the extent Pritchett challenges the trial court's substantive rulings, his claim lacks merit for the

reasons given in the following discussion of the claims about newly-discovered evidence raised in his motion for relief from judgment.

VI.    <u>Claim Six: Newly-Discovered Evidence</u>

Pritchett alleges that he is entitled to a new trial because newly-discovered evidence supports his claim of self-defense. ECF 12, PgID 84–87. The new evidence consists of an affidavit from Jalyn Stephens and social media posts.

Stephens's affidavit indicates that the party given at his home on August 13, 2011, was going as planned until Leon Richardson arrived with uninvited individuals, including Devonta Washington, Tramaine Matlock, Armel Price, and "Vonta." ECF 12, PgID 110. Stephens avers that he asked Richardson and his associates to leave, but they instead walked toward the backyard. *Id.* Then, as Stephens started talking to Brittany Keys, someone in a white shirt began shooting. *Id.*

Pritchett asserts that Stephens's affidavit would have corroborated Jajuan Billups's testimony that the uninvited individuals were shooting toward the backyard. ECF 12, PgID 86; *see* ECF 15-4, PgID 427 (Billups's trial testimony). As for the social media posts, Pritchett claims that they are exculpatory because they place blame for the murder on Washington and support Pritchett's defense that he acted in self-defense after a member of a rival gang pulled out an extended clip for a gun. *See* ECF 12, PgID 84.

The state trial court was the only court to address Pritchett's claim in a reasoned opinion, and it determined that Stephens's affidavit and the social-media

posts were not a sufficient basis for granting a new trial. ECF 15-7, PgID 587–88. The Court agrees.

To the extent Pritchett claims to be actually innocent, his claim must be rejected because "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). The rule reflects "the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Id*.[4]

Moreover, "[t]o be credible, [a claim of actual innocence] requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup,* 513 U.S. at 324.

Pritchett has not met the extraordinarily high threshold needed to show that he is actually innocent. He points to Jalyn Stephens's affidavit, which states that someone in a white shirt shot the victims. But Stephens did not identify the shooter as someone who arrived at the party with Washington. He also did not say that he actually saw the shooting or the shooter. As such, Stephens's affidavit does not establish that Pritchett acted in lawful self-defense and is actually innocent.

---

[4] A different presumption applies in capital cases. *Herrera*, 506 U.S. at 417. And the presumption still carries an "extraordinarily high" threshold showing. *Id.* But this is not a capital case.

The social media posts submitted by Pritchett contain unclear meanings, an unidentified author, and an unknown audience. *See* ECF 12, PgID 113–15. Pritchett speculates that Armel Price wrote the social media posts and that the posts were directed at Washington. *Id.* at 85–86.

Even if the Court assumed that the social media posts conveyed the message that Washington fired at Pritchett, the posts contradict the physical evidence at the scene, which established that Pritchett was the lone shooter. Pritchett testified at trial that he did not hear any other gunshots until *after* he fired in Washington's direction. ECF 15-4, PgID 452 (testifying that Pritchett did not hear gunshots until he was running away from the shooting scene).

Pritchett's newly discovered evidence fails to meet the extraordinarily high standard needed to prove that he is actually innocent. Accordingly, the Court rejects his claim of actual innocence and declines to grant relief on the claim.

VII.    Claim Seven: Trial Counsel's Failure to Investigate,
        <u>Request an Expert Witness, and Object to the Non-Disclosure of Evidence</u>

Petitioner alleges that he was denied effective assistance of counsel by trial counsel's failure to (a) investigate, locate, and subpoena *res gestae* witnesses; (b) request an expert witness on fingerprints and firearms or ballistics; and (c) object to the prosecution's failure to provide potentially exculpatory evidence. ECF 12, PgID 81–83, 88–100.

To succeed on his claim, Pritchett must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficient-performance prong "requires

showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The state trial court cited *Strickland* in its order denying Pritchett's motion for relief from judgment and concluded that Pritchett's claims about trial counsel lacked merit.

A. *The Failure to Call Witnesses.*

Petitioner contends that there were thirty or forty people at the party and that at least five or six individuals were standing near him when the incident occurred. ECF 12, PgID 89. He avers that the witnesses would have supported his defense, and even though he informed his attorney about the individuals, his attorney failed to contact or call the witnesses to determine whether their testimony would be helpful. *Id.*

Pursuant to *Strickland*, attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must

be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.

The duty to investigate, however, "does not force defense lawyers to scour the globe;" "reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005).

Further, in the absence of "affidavits or any other evidence establishing what [the witnesses] would have said" if they had testified, Pritchett cannot show that he was prejudiced by the omission of their testimony. *Tinsley v. Million,* 399 F.3d 796, 810 (6th Cir. 2005); *see also Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007). Thus, trial counsel was not ineffective for failing to investigate, locate, and subpoena all the unnamed individuals that attended the party.

Pritchett, nevertheless, maintains that his attorney should have produced Brinka Brocks and Brittany Keys who gave written statements to the police after the shooting. ECF 12, PgID 89–91. A defense attorney's duty to make reasonable investigations "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). Under *Strickland*, however, the Court "must presume that decisions of what evidence to present and whether to call or question witnesses are matters of trial strategy." *Cathron v. Jones*, 77 F. App'x 835, 841 (6th Cir. 2003) (citing *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002)).

Pritchett contends that his trial attorney should have called Brinka Brocks as a witness because Brocks informed the police that some gunshots appeared to come from the front yard and some from the backyard. ECF 12, PgID 89. She also informed the police that she saw a boy with braids who had a small silver gun. *Id.* at 122.

The trial transcript indicates that defense counsel did attempt to investigate and produce certain witnesses at trial. He asked the prosecution for help in obtaining the presence of two witnesses, including a woman by the name of Brocks. ECF 15-3, PgID 377–78; ECF 15-4, PgID 437. Detective Williams agreed to try to locate the witnesses, *see* ECF 15-3, PgID 378, but he was unable to find them. He stated that he left his card, number, and a subpoena at Brocks' residence, but that he had not heard from her. ECF 15-4, PgID 437.

Even if Brocks testified, her testimony would not have produced a different outcome. Although she informed the police that some gunshots appeared to come from the front yard and some from the backyard, *see* ECF 12, PgID 122, the physical evidence established that there was only one shooter and that the shooter fired toward the street, not the garage. In addition, the boy with braids pulled out a gun *after* the shooting. *See id.*

Pritchett claims that his trial attorney also should have called Brittney Keys as a defense witness because she informed the police on the night of the incident that everyone was simply having fun at the party until a man with five or six companions arrived. ECF 12, PgID 90. In a second statement to the police made one day later, Keys identified Washington as part of the uninvited group that was asked to leave

the party. ECF 12, PgID 128. Keys also stated that Washington was one of two individuals who walked to the backyard and hugged a girl named Nakrya. *Id.*

Keys's testimony would not have helped the defense because she did not see anyone with a gun. Although she did notice Washington and another individual enter the backyard before the shooting, she claimed that there were no problems at the time, and she thought that the subsequent gunshots came from the area near the garage, which was where Pritchett claimed to be before the shooting. ECF 12, PgID 125–29.

To conclude, Pritchett has not shown that any of the many party's attendees would have been willing and able to testify that he acted in self-defense or in defense of others. It further appears that Brocks and Keys could not be located and that, if they had testified consistently with their statements to the police, their testimony would not have helped Pritchett. Defense counsel was not ineffective for allegedly failing to investigate and produce witnesses.

B. *The Failure to Request an Expert Witness.*

Pritchett maintains that trial counsel was ineffective for failing to request an expert witness in fingerprints and firearms or ballistics. ECF 12, PgID 91–96. He claims that a defense witness could have rebutted the testimony of prosecution witnesses regarding the casings found at the crime scene.

Although it can be assumed in some cases that counsel was ineffective for failing to consult or rely on experts, there are "'countless ways to provide effective assistance in any given case,'" and "'[e]ven the best criminal defense attorneys would

not defend a particular client in the same way.' Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." *Richter*, 562 U.S. at 106 (quoting *Strickland*, 466 U.S. at 689).

Here, the physical evidence was not complicated, and a defense expert would have struggled to rebut the prosecution witnesses' testimony about the physical evidence. Two prosecution witnesses testified that eight or nine .45 caliber casings were found at the crime scene and that all of them were located in the same area. ECF 15-3, PgID 313–15 (Officer Raymond Diaz's testimony); ECF 15-4, PgID 401–02 (Detective Keith Norrod's testimony). Furthermore, Pritchett admitted at trial that he brought to the party a fully loaded, semi-automatic, .45 caliber gun that ejects shells and that he fired the gun. *Id.* at 452, 459. Because he tossed the gun in the garbage and did not know where it was, there was no gun to compare to the casings. *Id.* at 462, 466.

Furthermore, Detective Norrod testified that the two spent bullets found at the scene were consistent with a .45 caliber automatic gun. *Id.* at 417. There were no bullet strikes on the garage or house. *Id.* at 403. This led him to believe that the weapon was fired down the driveway toward the street. *Id.*

Defense counsel thoroughly cross-examined the prosecution witnesses on the firearm evidence. He elicited an admission from Officer Diaz that the casings could have come from different guns. ECF 15-3, PgID 321. And he elicited Detective

Williams's admission that tests performed on the bullets in evidence were inconclusive as to whether they came from one or two guns. *Id*. at 372.

Defense counsel also questioned Detective Williams regarding whether he submitted the casings to the State Police Lab for trace evidence. Detective Williams, however, made clear that the crime lab would not examine casings for fingerprints, even on request. *Id*. at 372, 374–75. And Officer Diaz testified that fired casings do not contain any trace evidence. *Id*. at 324.

The Court concludes that defense counsel was not ineffective for failing to request a defense expert on fingerprints or firearms and ballistics. Defense counsel thoroughly cross-examined witnesses on the topic, and it does not appear from the admissible evidence that the result of the trial would have been different if defense counsel had requested and produced an expert witness on fingerprints and firearms or ballistics. Defense counsel's performance was sufficient and did not prejudice Pritchett's case.

C. *The Lack of an Objection to the Prosecution's Failure to Provide Evidence.*

Pritchett claims that the prosecution failed to disclose text messages between Washington and Nakyra Briggs and that his trial attorney should have objected to the prosecution's failure to produce the messages. ECF 12, PgID 97–98. He claims that the messages would have shown that Washington went to the party knowing that rival gang members would be there. *Id*. at 97. According to Pritchett, the text messages were evidence of Washington's motive, scheme, or plan. *Id*.

The prosecution's suppression "of evidence favorable to an accused upon request violates due process [when] the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). A *Brady* claim is comprised of three elements: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

Pritchett submitted a copy of Detective Williams's request for Washington's telecommunications records and a judge's order directing Metro PCS to furnish the records. ECF 12, PgID 117–20. The request for the records states, among other things, that:

> The investigation reveals that Mr. Washington received several text messages from Ms. Nakyra Riggs encouraging him to come to the location where several rival gang members were present and the names were said to be contained in the text messages.
>
> Shortly after Mr. [Tramaine] Matlock, Mr. Washington and Mr. Price (T.N.O. gang members) arrived, Mr. Washington greeted Ms. Riggs with a hug, approximately 8 - 10 shots rang out and Mr. Matlock was fatally wounded[.] Mr. Washington was critically wounded.
>
> Affiant has probable cause to believe that the text messages may reveal the names of the suspect(s) responsible for this crime.

*Id.* at 118 ¶¶ 4–6. (Detective Williams's application for an order requesting telecommunications records).

Whether the prosecution actually obtained the records is unclear. Petitioner has not submitted the records to the Court, and even if the prosecution did possess

the records, Pritchett has not shown that the records were favorable to him. Mere speculation that the records would have led to information about another individual's involvement in the murder is insufficient to establish a *Brady* violation. *Henness v. Bagley*, 644 F.3d 308, 325 (6th Cir. 2011). Pritchett does not demonstrate "that, had the evidence been disclosed to the defense, the result at trial would have been different." *Id.* at 325–26. Pritchett, therefore, has not stated a *Brady* claim and is not entitled to relief on his claim.

VIII.   <u>Claim Nine: Ineffective Assistance of Appellate Counsel</u>

In his ninth and final claim, Pritchett alleges that his appellate attorney was ineffective for failing to raise on direct appeal the claims that Pritchett presented to the trial court in his motion for relief from judgment. ECF 12, PgID 102–04. The claims concern the newly-discovered evidence, trial counsel's failure to investigate witnesses, request an expert witness, and object to the prosecutor's failure to produce evidence, and the alleged violation of Petitioner's right of confrontation. The state trial court adjudicated Pritchett's claim about appellate counsel during the post-conviction proceedings and determined that appellate counsel was not ineffective for failing to raise non-meritorious claims. ECF 15-7, PgID 592.

An ineffective appellate counsel claim is reviewed under the *Strickland* standard. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). To prevail on his claim about appellate counsel, Petitioner must demonstrate (1) that his appellate attorney acted objectively unreasonably in failing "to discover nonfrivolous issues and to file a merits brief raising them," and (2) there is a reasonable probability the defendant would

have prevailed on appeal if his attorney had raised the issues. *Id.* (citing *Strickland*, 466 U.S. at 687–91, 694). "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

Pritchett presented his Confrontation-Clause claim to the Michigan Court of Appeals on direct appeal, and the claims concerning the newly-discovered evidence and trial counsel's performance lack merit for the reasons given above in the Court's discussion on those claims. Appellate counsel did not act unreasonably in failing to discover and raise these claims on appeal. Further, because the trial court found no merit in the claims and the Michigan appellate courts denied leave to appeal the trial court's decision, there is not a reasonable probability that Pritchett would have prevailed if counsel had raised the claims on appeal.

The state trial court reasonably determined that Pritchett's appellate attorney was not ineffective. Therefore, Pritchett has no right to relief on the basis of his claim regarding appellate counsel.

IX.    <u>Certificate of Appealability and In Forma Pauperis Status on Appeal</u>

To appeal the Court's decision, Pritchett must obtain a certificate of appealability. To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate the denial of a constitutional right, Pritchett must show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to

proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997). Here, jurists of reason would not debate the Court's denial of Pritchett's claims. The Court therefore denies him a certificate of appealability.

Moreover, the Court will deny Pritchett permission to appeal in forma pauperis because an appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the Clerk of the Court shall **AMEND** the docket to reflect Petitioner's current place of confinement at the Macomb Correctional Facility, 34625 26 Mile Road, Lenox Township, MI 48048, and his current warden, Respondent Pat Warren.

**IT IS FURTHER ORDERED** that Petitioner's initial habeas petition [1] and amended habeas petition [12] are **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**. Petitioner may apply to the Sixth Circuit Court of Appeals for a certificate of appealability.

**IT IS FURTHER ORDERED** that leave to appeal in forma pauperis on appeal is **DENIED**. Petitioner may apply to the Sixth Circuit Court of Appeals for leave to appeal in forma pauperis.

**SO ORDERED**.

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: July 9, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 9, 2019, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager